**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THERESA STUMPF, | ) | |
| on behalf of herself and the classes, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:12-CV-4688 |
| | ) | |
| vs. | ) | Judge Gettleman |
| | ) | |
| PYOD, LLC, RESURGENT CAPITAL | ) | Magistrate Judge Brown |
| SERVICES, L.P., and WELTMAN, WEINBERG | ) | |
| & REIS CO., LPA, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT**
**OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Theresa Stumpf ("Plaintiff"), individually and as representative of a Class of similarly situated persons, by Class Counsel, respectfully submits the following Memorandum in Support of Final Approval of the Class Action Settlement Agreement ("Agreement") which this Court preliminarily approved on June 7, 2013.

A settlement fund of $165,000 will be created. The $165,000 Class Settlement Fund shall include plaintiff's award ($5,000), settlement administrative costs and notice costs for the class ($14,371.99), and Class Counsel's attorneys' fees and costs of $45,188.40, subject to approval from this Court. Every class member who is entitled to take from the fund will receive a pro rata share of the remaining settlement fund of $100,439.61. Eight Hundred and Nine (809) Claim forms were timely submitted. Ten (10) claim forms were submitted after the August 22, 2013 deadline to submit claim forms. If only timely and valid claim forms are considered, each class member will receive approximately $124.15. If all claim forms received up through the date of filing of this

memorandum are considered, each class member will receive $122.63.

The Court is advised that subsequent to the entry of the preliminary approval order and findings, notice of the settlement of this action was mailed to 14,258 individuals identified as Class members, on June 28, 2013. Following the mailing, 3966 notices were returned as undeliverable with no forwarding address available, and 192 notices were returned and re-mailed to a forwarding address. There were 3 timely requests for exclusion, 0 timely objections submitted by the class members, 0 late requests for exclusion, 0 late objections and 2 ambiguous letters submitted by the class members. Under the Agreement, Class members had forty-five (45) days from the date of the notice in which to submit a claim, object to, or exclude themselves from the Settlement.

## I.    OVERVIEW OF THE LITIGATION PRECEDING SETTLEMENT

Plaintiff filed a class action complaint in the United States District Court for the Northern District of Illinois, Eastern Division, entitled *Theresa Stumpf v. PYOD, LLC et al.12-cv-4688* (the "Litigation" or the "Action"). Plaintiff asserted a claim pursuant to the Fair Debt Collection Practices Act ("FDCPA") in connection with the conduct of Defendants. Specifically, Plaintiff claimed that Defendants violated the FDCPA 15 U.S.C. §1692 *et seq.* and the Illinois Consumer Fraud Act, 814 ILCS 505/2 ("ICFA") by allegedly dunning and suing consumers on time-barred debts without disclosure of that fact. Only claims for statutory damages under the FDCPA, not any actual damages claims, are being released by the class members.

The parties successfully reached an agreement to settle the case on a class-wide basis. The parties' agreement was preliminarily approved by the Court on June 7, 2013. Defendants served the notice required by the Class Action Fairness Act on June 28, 2013. As demonstrated below, the parties' Agreement is now ripe for this Court's consideration and final approval.

2

II.     **THE ADMINISTRATION OF THIS CLASS ACTION SETTLEMENT.**

    A.     **The Preliminary Approval Order.**

On June 7, 2013, this Court granted preliminary approval of the Agreement reached between the parties. In the Preliminary Approval Order ("Order"), the Court specifically found that the proposed terms of the settlement satisfied all of the elements of Federal Rule of Civil Procedure 23(a) and 23(b)(3). The Order further established a procedural framework for the final approval of the settlement. The Order required the parties to cause notice to be mailed to the members of the Class that was conditionally certified by the Court (collectively "the Class"), set deadlines and procedures for requests for exclusion and objections to the settlement, and set a October 1, 2013, final approval hearing.

For purposes of settlement, the Court conditionally certified three settlement classes.

Class One consists of (a) all individuals with addresses in one of the applicable jurisdictions (b) with respect to whom defendant PYOD, LLC filed a lawsuit or sent or caused to be sent a letter (directly or by an agent or attorney) (c) to collect auto retail installment contract and lease debts (d) more than four years after the later of default, repossession, or chargeoff, (e) which letter was sent or lawsuit was pending at any time during a period beginning June 14, 2011 and ending July 4, 2012.

Class Two consists of (a) all individuals with addresses in one of the applicable jurisdictions (b) with respect to whom defendant Weltman filed a lawsuit or sent or caused to be sent a letter (directly or by an agent or attorney) (c) to collect auto retail installment contract and lease debts (d) more than four years after the later of default, repossession or chargeoff, (e)

3

which letter was sent or lawsuit was pending at any time during a period beginning June 14, 2011, and ending July 4, 2012.

Class Three consists of (a) all individuals with Illinois addresses (b) with respect to whom defendant PYOD, LLC filed a lawsuit or sent or caused to be sent a letter (directly or by an agent or attorney) (c) to collect auto retail installment contract and lease debts (d) more than four years after the later of default, repossession or chargeoff, (e) which letter was sent or lawsuit was pending at any time during a period beginning June 14, 2009 and ending July 4, 2012.

**B.     The Sending of Class Notice and Claim Forms.**

The Court is advised that subsequent to the entry of the Order, notice of the settlement of this action was mailed to 14,258 individuals identified as members of the Class on June 28, 2013.  Declaration of Janet Noterman, attached as <u>Exhibit A</u>.  The U.S. Post Office returned 3966 of the notices as "undeliverable" with no forwarding address, and 192 notices were returned and re-mailed to forwarding addresses by the U.S. Postal Service.  There were 3 timely requests for exclusion, 0 timely objections submitted by the class members, 0 late requests for exclusion, 0 late objections, and 2 ambiguous letters submitted by the class members, which Class Counsel requests the Court to treat as exclusions.

**C.     The Benefits Provided by the Settlement.**

This Court has previously considered the terms of the settlement in granting preliminary approval of the Agreement.  The terms of the Agreement are as follows:

(a)     Relief to Plaintiff – Plaintiff, THERESA STUMPF, will receive $5,000.00 for her actual and statutory damages and as an incentive award for being the class representative.

(b)     Relief to members of the Classes – Defendants shall pay $165,000 into a Class

4

Settlement Fund.  The $165,000 Class Settlement Fund shall include plaintiff's award; settlement administrative costs and notice costs for the class ($14,371.99, *see* Exhibits A-B); and plaintiff's attorneys' fees and costs, subject to approval from this Court, of $45,188.40,  30% of the remaining Class Settlement Fund. The remainder of the Class Settlement Fund, approximately $100,439.61, will be distributed on a *pro rata* basis among the class members who the Court deems to have submitted timely claim forms.

(c)     Cy Pres – Any amount remaining in the Class Fund after all class checks are void will be distributed in equal parts to The Legal Assistance Foundation and Equip for Equality.

(d)     Attorneys' fees – Subject to Court approval, Class Counsel will receive attorney fees and costs of $45,188.40, which is 30% of the Settlement Fund, after the costs of administration are subtracted. Defendants agree not to object to a fee petition that requests up to this amount.

(e)     Actual Damages – The settlement does not release class members' potential claims for actual damages.

(f)     Reasonable Settlement Administrator fees and expenses of $14,371.99 will be paid out of the Settlement Fund prior to distribution, which are the costs associated with the mailing of the Class Notice, $12,386.99 which was paid in advance by class counsel, and the costs of mailing settlement checks to class members, which has been estimated by Dorothy Sue Merryman as being approximately $1,985.00.

## D.     Ambiguous Letters from Class Members.

Class counsel has received two ambiguous letters from class members.  Exhibits C-D.  Class counsel wrote to the two class members requesting that they clarify their intentions regarding the settlement.  Exhibits E-F.  Class counsel received no response.  Therefore, class counsel has

attached these two letters for the Court to decide whether to consider the letters as claim forms, exclusions, or objections.

### III.   THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT.

The settlement satisfies all the requirements of Rule 23.

### A.   Rule 23(a)(1) - The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable.

Notice was sent to 14,258 persons who were identified as Class members.  The United States Court of Appeals for the Seventh Circuit has recognized that as few as 40 class members are sufficient to satisfy the "numerosity" requirement of Rule 23(a)(1).  *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969); *see also Newberg on Class Actions*, 3rd ed. Sec. 3.05, pp. 3-25 ("The difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.").  The number of class members in this case plainly satisfies the numerosity requirement of Rule 23(a)(1).

### B.   Rule 23(a)(2) - The Claims Of The Settlement Class Arise From Common Questions Of Law And Fact.

The "commonality" requirement of Rule 23(a)(2) is usually satisfied where the class members' claims arise from a common nucleus of operative fact.  *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992).  Rule 23(a)(2) requires only that the class members share at least one question of fact or law in common.  *Kreuzfeld A.G. v. Carnehammer*, 138 F.R.D. 594, 599 (S.D.Fla. 1991) (the issue of commonality "turns on whether there exists at least one issue affecting all or a significant number of proposed class members").

In the present case, the claims arose from one common question: Did Defendants violate the FDCPA by suing or attempting to collect upon time-barred debts? This common question satisfies Rule 23(a)(2).

**C.      Rule 23(a)(3) - Named Plaintiff's Claims are Typical Of the Claims Of The Settlement Class.**

The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the same reasons that the "commonality" requirement of Rule 23(a)(3) is met. *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1993)("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory"); *see also Kornberg v. Carnival Cruse Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)(the typicality requirement is satisfied where the "claims or defenses of the class and the class representative arise from the same event or practice and are based upon the same legal theory").

In this case, Plaintiff's claim arose from the same questions of law and facts those of Class members: Whether Defendants violated the FDCPA by suing or attempting to collect upon time-barred debts. Rule 23(a)(3) is plainly satisfied in this case.

**D.      Rule 23(a)(4) - Plaintiff and Class Counsel Will Fairly And Adequately Protect The Interests Of The Settlement Class.**

The determination that the "representative parties will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) involve two considerations: (1) whether the Plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2) whether the Plaintiff has any interests antagonistic to the class. *General Tel. Co. v. Falcon*, 102 S.Ct. 2364, 2370, n.13 (1982); *Retired Chicago Policy Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

7

As set forth in Class Counsel's Declaration, Class Counsel is experienced in class action litigation. *See* <u>Exhibit G</u> and its Appendices. In addition, Plaintiff has no interests in conflict with the class. Therefore, the named Plaintiff and Class Counsel satisfy the adequacy of representation requirement of Rule 23(a)(4).

### E. The Settlement Class is Appropriate Pursuant to Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) where: (1) common questions of law or fact predominate over individual questions; and where (2) a class action represents a superior method for the fair and efficient adjudication of the controversy. Both of these requirements are satisfied in the present case.

#### 1. Common questions predominate over individual issues.

In order for common questions of law or fact to predominate over individual issues for purposes of Rule 23(b)(3), common issues must constitute a significant part of the individual cases. *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). Courts "generally focus on the liability issues in deciding whether the predominance requirement is met, and if the liability issue is common to the Class, common questions are held to predominate." *In re Alexander Grant & Co. Litigation*, 110 F.R.D. 528, 534 (S.D.Fla. 1986); *see also Dura-Built Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 89 (S.D.N.Y. 1981). In the present case, a common issue relating to the lawfulness of suing or attempting to collect upon time-barred debts predominates over individual issues, if any, as required by Rule 23(b)(3).

#### 2. A Class Action is Superior to Other Methods of Resolving This Matter.

For many of the reasons set forth above, a class action is the superior method to resolve the claims presented in this action. In determining the superiority of a class action, the Court must

consider the best available method of resolving the controversy in keeping with the goal of judicial economy. In reaching this determination, the Court should consider the inability of the uninformed to bring their claims and the improbability that large numbers of class members would possess the initiative to litigate individually. *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974). In *Phillips Petroleum Company v. Shutts*, 472 U.S. 797, 809, 105 S.Ct. 2965 (1985), the Supreme Court recognized that in cases where the class members' claims are too many or too small to litigate on an individual basis, the Court should certify the case as a class action under Rule 23(b)(3).

Given the large number of individual lawsuits that would be required if a class were not certified, a class action presents a superior method to fairly and efficiently adjudicate all of the claims of the class in this case, within the meaning of Rule 23(b)(3). To the extent that any class members wished to pursue any such individual claim, they were free to opt-out of the settlement under Rule 23(b)(3). In the present case, 3 class members elected to exclude themselves from the settlement.

### F.     The Standard For Granting Final Approval To The Class Action Settlement.

 In *Amchem Productions, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231 (1997), the United States Supreme Court explained that, before approving a class action settlement, the District Court must first be satisfied that the elements of Rule 23(a) and 23(b) have been met. *Id.* at 621, 117 S.Ct. at 2248.

Once the Court has determined that the requirements of Rule 23(a) and 23(b) have been met, the Court must then determine whether Rule 23(e) has been satisfied by determining whether the settlement is fair, reasonable, and adequate. *General Electric Capital Corp. v. Lease Resolution*

*Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997). The Court considers the following six factors in making this determination:

1.  The strength of the plaintiff's case on the merits measured against the terms of the settlement;

2.  The complexity, length, and expense of continued litigation;

3.  The amount of opposition to the settlement among class members;

4.  The presence of collusion in gaining a settlement;

5.  The stage of the proceedings; and

6.  The amount of discovery completed.

*Id.* (citing *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir. 1985)). The class action settlement in the present case satisfies each of the factors outlined in *GE Capital*.

  While Plaintiff believes she would have prevailed at trial on the merits, there are risks associated with further litigation. In order to avoid the uncertainty presented by any litigation, the parties agreed to settle the dispute between them. The compromise provides that each class member will receive a pro rata share of the Settlement Fund, which is $165,000 less the costs of administration of approximately $14,371.99, and Class Counsel's attorney's fees and costs discussed below of one-third of the Class Fund after costs of administration, or $45,188.40 leaving a total Settlement Fund available to clients in the amount of approximately $100,439.61. Defendant has agreed to pay beyond the maximum statutory damages recoverable by the Class against Defendant under §1692k of the FDCPA. The arguable strength of the Class' claims compare favorably to the terms of the settlement, satisfying the first of the *GE Capital* factors.

  In addition, the settlement is warranted by the complexity, length and expense of continued litigation, satisfying the second *GE Capital* factor. The settlement easily satisfies the third *GE*

*Capital* factor because only 3 of the 14,258 class members elected to exclude themselves from the settlement.

As evidence of the lack of any collusion, the settlement was negotiated at arms length by experienced counsel, and the above-described settlement amount to Plaintiffs and Class counsel compares favorably to the direct benefits to the Class, thereby satisfying the fourth *GE Capital* factor.

Finally, with respect to the fifth and sixth *GE Capital* factors, they are satisfied by the extensive negotiation that occurred in reaching settlement. Plaintiff filed her Complaint on June 15, 2012. The Parties first discussed settlement in February, 2013, and a full and complete settlement was not agreed upon until May 2013. Class counsel and Defense counsel engaged in much "back and forth" in coming to the settlement terms, and explored the issues underlying settlement thoroughly, including plaintiff's counsel filing a motion to compel to explore additional information, before coming to an agreement. Given the extensive settlement negotiations and the investigation completed, the proposed settlement satisfies the fifth and sixth *GE Capital* factors.

## IV.   THE ATTORNEY'S FEES AND COSTS ARE REASONABLE.

Pursuant to the Agreement, Class Counsel requests approval of payment of attorney's fees and costs in the amount of $45,188.40, 30% of the Settlement Fund after the costs of administration are subtracted. As set forth in the Declaration of Daniel A. Edelman (Exhibit G), class counsel include experienced class action attorneys, all of whom contributed their skills and expended their resources in a coordinated effort that resulted in the settlement of this matter.

The Seventh Circuit has specifically authorized the district courts to award attorney's fees using the lodestar method or the percentage of fund method. *Cook v. Niedert*, 142 F.3d 1004, 1010 (7th Cir. 1998); *In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001).

## A.      The Common Fund Method

It has been well established in the Seventh Circuit, and elsewhere, that fee awards based upon a percentage of a recovery are fair and reflect what could have been contracted for in the marketplace.  Consumer protection cases, where counsel is retained on a contingent fee basis, are certainly no different.  It is well established that when a representative party has created a "common fund" for, or has conferred a "substantial benefit" upon, an identifiable class, counsel for that party is entitled to an award of attorneys' fees from the fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *In the Matter of: Synthroid Marketing Litigation*, 264 F.3d 712, 717 (7th Cir. 2001). When deciding on appropriate attorney compensation in a common-fund case, a court must endeavor to award "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In Re: Synthroid Marketing Litigation*, 264 F.3d 712, 718 (7th Cir. 2001).

The Seventh Circuit in *Synthroid* explained that determination of the market rate for the legal fees should be based in part on the following factors:

The market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case.  *Synthroid*, 264 F.3d at 721.

Plaintiffs' counsel took this case on a contingent fee basis, and thus was faced with a significant risk of non-payment.  A fee request of one-third of the remaining Class Fund, or

$43,688.40 is in the 25% to 40% range, depending on various facts and circumstances. *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996), *aff'd* 160 F.3d 361 (7th Cir. 1998) (38% awarded); *Spicer v. Board of Options Exchange*, 844 F. Supp. 1226 (N.D Ill. 1993) (29% awarded); *Family L.P. v. Price Waterhouse LLP*, 2001 WL 1568856 (N.D. Ill. 2001) (33 1/3 % awarded); *Gilbert v. First Alert, Inc.*, 1998 WL 14206 (N.D. Ill. 1998); (30% awarded); *Goldsmith v. Technology Solutions Co.*, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. 1995) (33 1/3 % awarded); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399 (7th Cir. 2000) (25% awarded).

## B. The Lodestar Method

Class Counsel's fees and costs provided for in the Agreement are also appropriate under the lodestar method of calculation, with a modest multiplier of 1.86 after deduction of costs. The total time and expense incurred by Class Counsel is $24,263.50 and $597.98 respectively. (*See* Appendix H to Exhibit G).

In computing the lodestar, the hourly billing rate applied is the hourly rate that is normally charged in the community where counsel practices, i.e., the "market price." *See, e.g., Blum*, 465 U.S. at 895; *McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988) ("'in most cases, billing rates reflect market rates — they provide an efficient and fair short-cut for determining the market rate'"); *Spencer v. Comserv Corp.*, 1986 WL 15155, Fed.Sec.L.Rep. ¶93, 124, at 95, 532 (D. Minn. Dec. 30, 1986) ("[compensating a nationally recognized securities class action attorney at his hourly rate is entirely appropriate."); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161,167 (3rd Cir. 1973) ("The value of an attorney's time generally is reflected in his normal billing rate."). The hourly rates of Plaintiff's counsel and a detailed listing of Class Counsel's lodestar are set forth in Exhibit G and its Appendices.

13

This case was prosecuted by Plaintiff's counsel on a contingent fee basis with no assurance of any fee. In undertaking to prosecute this case on that basis, Plaintiff's counsel assumed a significant risk of nonpayment or underpayment. Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award. *See In re Continental Illinois Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiff's counsel <u>must</u> be compensated adequately for the risk of non-payment); *Ressler v. Jacobsen*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.").

The requested multiplier of 1.86 is reasonable and fair in light of the degree of risk. *See e.g.*, *In re Continental Sec. Litig.*, 926 F.2d 566, 569 (7th Cir. 1992) (reversible error found where district court refused to award a risk multiplier); *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) (risk multiplier mandated in common fund cases where counsel had "no sure source of compensation."). Awarding fees above the lodestar is appropriate where the class members receive a significant recovery, and the "purpose of the statute is actually being fulfilled."

Other courts have awarded fees that resulted in significantly higher multiples of the lodestar. *See Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) (applying multiplier of 5.5) *Willson v. New York Life Insurance Co.*, 1995 N.Y. Misc. LEXIS 652, *94 (S.Ct. 1995) (awarding fee that resulted in multiple of 4.6 times the lodestar), *citing Weiss v. Mercedes-Benz of No. American, Inc.*, 899 F. Supp. 1297 (D. N.J., 1995) (awarding fee that resulted in multiple of 9.3 times the lodestar); *In re RJR Nabisco, Inc.*, Sec.Litig., [1992 Transfer Binder] Fed.Sec.L.Rep. (CCH) P 96,984, at 94,267 (S.D.N.Y. 1992) (multiplier of 6); *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) (multiplier of 8.74); *Glendora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465,

202 Cal. Rptr. 389 (1984) (fee award was 12 times the lodestar); *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp.2d 434, 439, n. 6 (D. Md. 1998) (noting that multipliers of 3 - 4.5 have been common over the years).

Class Counsel filed a well researched complaint alleging claims for relief under federal law. Class Counsel engaged in the negotiations which resulted in the Agreement. As discussed above, the settlement provides the maximum statutory damage award available under the FDCPA. The Claimants will each receive a *pro rata* share of the Settlement Fund, which after payment of attorney's fees and administrative expenses will be approximately $101,939.60. In light of the work performed in this matter, and the actual time and expenses incurred by counsel of $24,263.50 and $597.98 respectively, *see* Appendix H to Exhibit G, Class Counsel's request for $45,188.40, is reasonable, particularly as it does not account for time that will be incurred by Class Counsel in ensuring that the settlement is implemented according to its terms, and responding to additional inquiries from members of a large Class. Accordingly, Class Counsel believes the amount requested is reasonable and requests approval of this amount by the Court.

**V.     CONCLUSION**

For all the reasons set forth above, Plaintiff individually, and as representative of the Class of similarly situated persons, by Class Counsel, request that this Honorable Court grant final approval of the Agreement and enter the parties' proposed final approval order (a draft of which is attached as Exhibit H).

Respectfully submitted,

s/Catherine A. Ceko
Catherine A. Ceko

Daniel A. Edelman
Cathleen M. Combs
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 South LaSalle Street, Suite 1800
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## CERTIFICATE OF SERVICE

I, Catherine A. Ceko, certify that on September 24, 2013 I caused a true and correct copy of the foregoing document via the CM/ECF system, which sent electronic notice of this filing to the parties named below:

David A. Mass
dmass@reedsmith.com

Gary S. Caplan
gcaplan@reedsmith.com

s/Catherine A. Ceko
Catherine A. Ceko

17