**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THERESA STUMPF, on behalf of herself** | ) | |
| **and others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Magistrate Judge Geraldine Soat Brown** |
| | ) | |
| **v.** | ) | **12 C 4688** |
| | ) | |
| **PYOD, LLC, et al.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the court in connection with the plaintiff's Motion for Final Approval of the Class Action Settlement and Request for Attorneys' Fees. [Dkt 70.] The court ordered class counsel to file a supplemental memorandum addressing whether attorneys' fees exceeding the lodestar may be awarded in a class action based on a statute that includes a fee-shifting provision in a settlement that produces a fund for the class and, if so, whether the fees requested by class counsel were reasonable. [Dkt 71.] For the reasons below, the court finds that class counsel may receive fees that exceed the lodestar. Nevertheless, counsel's submissions do not allow the court to make a final determination of the amount of fees to be awarded. Class counsel shall, therefore, file an additional supplemental memorandum by November 6, 2013, addressing those issues.

**Background**

On June 7, 2013, the court preliminarily approved the class action settlement in this Fair Debt Collection Practices Act ("FDCPA") case. [Dkt 68.] The FDCPA contains a fee-shifting provision. 15 U.S.C. § 1692k(a)(3) ("any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable[,] . . . .in the case of any successful action to enforce the foregoing liability," for costs and attorneys' fees). The complaint sought statutory fees from the defendants directly. (Compl. at 7-9.) [Dkt 1.] The proposed settlement, however, provided that "plaintiff's attorneys' fees and costs, subject to approval from this Court and not to exceed 30% of the Settlement Fund" would be paid from the class settlement fund. (Joint Mot. for Preliminary Approval of Class Action Settlement at ¶ 7(b).) [Dkt 63.]

On October 1, 2013, the court held a final approval hearing in connection with the plaintiff's Motion for Final Approval of the Class Action Settlement and Request for Attorneys' Fees. In that motion, class counsel requested, among other things, that the court award $45,188.40 in attorneys' fees and costs out of the settlement fund. (Pl.'s Mem. Supp. Final Approval at 11.) The actual fees and costs incurred by class counsel are $24,263.50 and $597.98, respectively. (*Id*. at 13.) The difference between the amount requested and the actual fees and costs is $20,326.92. If the court accepts the class counsel's proposed fees and costs, each claimant will receive approximately $124. (*Id*. at 1.) If counsel receives their actual fees and costs, each claimant will receive approximately $150. (*See id*.)[1]

---

[1] In plaintiff's motion, there is one mention of a request for $43,688.40, but this appears to be a mistake because $45,188.40 is the amount consistently mentioned throughout the rest of the motion. (Pl.'s Mem. Supp. Final Approval at 13.)

During the final approval hearing, the court found that the settlement was fair and reasonable, and that notice was appropriate. [Dkt 71.] However, the court questioned whether attorneys' fees exceeding the lodestar (a reasonable fee times reasonable hours, as detailed in *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983)), may be awarded in a class action based on a statute that includes a fee-shifting provision in a settlement that produces a fund for the class and, if so, whether the fees requested were reasonable. It thus ordered class counsel to file a memorandum addressing those issues. Because a fee award exceeding the lodestar decreases the amount due to each claimant but does not affect the bottom line, the defendants take no position regarding the calculation of fees.

## Discussion

Class counsel requests fees from the common fund that exceed the lodestar. For the reasons discussed below, the court has the authority to award attorneys' fees from the common fund that exceed the lodestar even though the FDCPA contains a fee-shifting provision. With respect to the amount of fees, as detailed below, counsel must file a second supplemental memorandum.

**A.      The Court's Authority to Award Attorneys' Fees Exceeding the Lodestar in a FDCPA Common Fund Case**

There are two ways to calculate the attorneys' fees that may be awarded to a prevailing party. Under the "'common fund doctrine' . . . a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984). The common fund doctrine is based on the idea that individuals who benefit from litigation should share the cost of that litigation. *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007). In contrast, "the lodestar

3

method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (emphasis in original). Since the *Hensley* decision, the lodestar figure has been the "guiding light of our fee-shifting jurisprudence." *Id.* at 551 (internal quotations and citations omitted). The court may enhance the lodestar amount in "rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.* at 554. For example, the Supreme Court has held that it is inappropriate to apply a risk multiplier to enhance an attorneys' fee award under the fee-shifting statutes applicable to cases brought under environmental statutes. *City of Burlington v. Dague*, 505 U.S. 557, 565-67 (1992). The Seventh Circuit has held that *Dague* applies to all statutes that contain a fee-shifting provision. *Barrow v. Falck*, 977 F.2d 1100, 1105 (7th Cir. 1992).[2]

Even though the FDCPA contains a fee-shifting provision, class counsel here contend that they may receive a percentage of the common fund that exceeds the lodestar. They assert that the rule that a fee award cannot exceed the lodestar if the basis for fees is a statutory fee-shifting provision only limits a defendant's liability for fees. They then reason that because the class will be responsible for attorneys' fees, not the defendant, they may receive a reasonable fee from the common fund that is greater than the lodestar. In support, they direct this court's attention to the

---

[2] To the extent that class counsel argue that, as a general matter, a lodestar amount in a fee-shifting case can be enhanced for the risk of contingency (Pl.'s Mem. Supp. Final Approval at 14), that position cannot be sustained in light of *Dague*. *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 642 n. 2 (7th Cir. 2011) (noting that the Seventh Circuit had allowed upward adjustments in contingent fee cases "prior to *Dague's* prohibition of contingency enhancements to the lodestar").

Seventh Circuit's decision in *Skelton v. Gen. Motors Corp.*, 860 F.2d 250 (7th Cir. 1988), in which the court endorsed the concept of enhancing the lodestar in a common fund case based on contingency.  (Pl.'s Suppl. Mem. at 1.)  [Dkt 72.]

*Skelton,* however, pre-dates *Dague*, which as noted above, prohibits the use of fee enhancements in cases where the entitlement to attorneys' fees is based on a statutory provision.  In *Florin v. Nationsbank of Georgia, N.A.*, which post-dates *Dague*, the Seventh Circuit confronted the precise question presently before this court:  whether "'when a case is initiated under a statute with a fee-shifting provision [but] is settled with the creation of common fund . . . statutory fee principles should govern in whole or in part the attorney fee award.'" 34 F.3d 560, 563 (7th Cir. 1994) (quoting *Skelton*, 860 F.2d at 254).

The court answered the question by holding that "risk multipliers remain available in common fund cases after *Dague*." *Id.* at 565.  Specifically, the court held that in an ERISA case, "the terms of ERISA's fee-shifting provision do not purport to control fee awards in cases settled with the creation of a common fund, nor does the operation of common fund principles in this case conflict with the provision's intended purpose." *Id.* at 563.  It then noted that the parties' settlement agreement contemplated that the settlement amount included an unspecified sum for class counsel's fees, and found that *Dague*'s prohibition against the use of risk multipliers in statutory fee cases was inapplicable because the source of attorneys' fees was a settlement fund created to benefit the plaintiff class.  *See id*. at 564-65.  The court concluded, "We therefore reiterate the law of this circuit that in common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court." *Id.* at 566.

Recently, the Seventh Circuit revisited the fee issue in a Fair Credit Reporting Act ("FCRA") case where the attorneys' fees were payable out of a common fund created by a settlement as opposed to the FRCA's fee-shifting provisions. *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 744 (7th Cir. 2011); *see* 15 U.S.C. §§ 1681n(a)(3) & 1681o(a)(2) (a prevailing plaintiff in a FCRA case is entitled to attorneys' fees if a defendant violates the FCRA willfully or negligently). The district court calculated attorneys' fees using "the 'percentage-of-fund' method, notwithstanding [its] general preference for the 'lodestar' approach." *In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, MDL 1350, 2009 WL 4799954 at *8 (N.D. Ill. Dec. 9, 2009). One of the attorneys appealed, arguing that her percentage of the common fund was too small. The Seventh Circuit agreed, extensively discussed the fee calculations using the "percentage-of-fund" approach, and held that the attorney was entitled to a higher percentage of the common fund. *In re Trans Union Corp. Privacy Litig.*, 629 F.3d at 748.

In the FDCPA case before this court, class counsel seeks to be paid pursuant to a proposed settlement that created a common fund, not the FDCPA's fee-shifting provision. Under the proposed settlement, class counsel may receive attorneys' fees and costs, as approved by the court, "not to exceed 30% of the Settlement Fund," paid from the class settlement fund. (Joint Mot. for Preliminary Approval of Class Action Settlement at ¶ 7(b).) Thus, this court may use either the lodestar or "percentage-of-fund" method to calculate class counsel's attorneys' fees. *See Florin*, 34 F.3d at 565-66; *see also Pavlik v. FDIC*, No. 10 C 816, 2011 WL 5184445 at *3 (N.D. Ill. Nov. 1, 2011) ("the 'percentage-of-fund' method and the lodestar method are two generally accepted approaches" to the calculation of attorneys' fees in common fund cases).

6

**B.** **The Attorneys' Fees Requested by Class Counsel**

Having determined that class counsel may receive fees under the "percentage-of-fund" or

lodestar methods, the court next considers which method is appropriate in this case and the amount

of fees requested by class counsel. As discussed above, the court may, in its discretion, utilize either

the "percentage-of-fund" or lodestar methods. *Florin*, 34 F.3d at 565-66. In exercising that

discretion, this court is mindful that the Seventh Circuit has "held repeatedly that, when deciding on

appropriate fee levels in common-fund cases, courts must do their best to award counsel the market

price for legal services, in light of the risk of nonpayment and the normal rate of compensation in

the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001).

When choosing between the two methods, the "percentage-of-fund" method has the

advantage of simplicity. *Florin*, 34 F.3d at 566. But "'[w]hat is left for the class, after fees have

been awarded, is always a paramount consideration.'" *Spicer v. Chicago Bd. Options Exch., Inc.*,

844 F. Supp. 1226, 1250 (N.D. Ill. 1993) (quoting *In the Matter of Superior Beverage/Glass

Container*, 133 F.R.D. 119, 126 (N.D. Ill. 1990)). Thus, the court must "carefully monitor

disbursement to the attorneys by scrutinizing the fee applications" when fees are paid from a

common fund, because in this situation, "the court becomes the fiduciary for the fund's

beneficiaries." *Skelton*, 860 F.2d at 253.

Here, the proposed settlement provides that "plaintiff's attorneys' fees and costs, subject to

approval from this Court and not to exceed 30% of the Settlement Fund" will be paid from the

$165,000 class settlement fund. (Joint Mot. for Preliminary Approval of Class Action Settlement

at ¶ 7(b).) 30% of the $165,000 settlement fund is $49,500. Counsel seeks $45,188.40, which is one

third of the settlement fund after the costs of administration are subtracted. (Pl.'s Mem. Supp. Final Approval at 11-12.)

Class counsel begins with the "percentage-of-fund" method. To justify the requested $45,188.40 under this method, counsel states that "[a] fee request of one-third of the remaining Class Fund . . . is in the 25% to 40% range, depending on various facts and circumstances." (Pl.'s Mem. Supp. Final Approval at 12-13.) Counsel then provides a string cite to six cases in which courts awarded fees in the amount of 25%, 29%, 30%, 33⅓%, 33⅓%, and 38% of the common fund. (*Id*. at 13.)[3] Given that the cited cases feature fee awards of 25% to 38%, the basis for referring to a "25% to 40% range" is unclear. Similarly, the "various facts and circumstances" that affect placement on the continuum of percentages of a common fund are not detailed. Moreover, to the extent that the cited cases awarded more than 30% of the common fund, they are obviously inapplicable to this case, which sets a ceiling of 30% of the common fund. In short, counsel's explanation does not provide the court with an understandable basis upon which it can choose a specific percentage and then determine if that percentage accurately reflects the market.

Class counsel's alternative attempt to justify the requested $45,188.40 under the lodestar method fares no better. The materials supporting counsels' hourly rate and the number of hours worked are sufficient. However, a risk multiplier is necessary to get from the actual attorneys' fees and costs incurred by counsel ($24,263.50 and $597.98, respectively) to $45,188.40. Counsel states that "[t]he requested multiplier of 1.86 is reasonable and fair in light of the degree of risk" and

---

[3] The plaintiff's supplemental memorandum addressing the basis for enhancing attorneys' fees provides a different string cite to cases awarding 25%, 27½%, 29%, 30%, 33⅓%, and 38%. (Pl.'s Suppl. Mem. at 5.) As with the plaintiff's original memorandum, these citations do not shed light on what the proper percentage should be in this case.

characterizes the suggested multiplier as "modest." (Pl.'s Mem. Supp. Final Approval at 13-14.) As with the "percentage-of-fund" method, counsel then provides a string cite with cases that award a wide range of multipliers. (*Id*. at 14-15.)

The basis for the 1.86 multiplier is unclear. It appears to be the product of selecting the desired amount of fees (one third of the settlement fund after the costs of administration are subtracted, or $45,188.40) and then working backwards to calculate the multiplier as an alternative way to justify the requested fees. When exercising its discretion to select a risk multiplier, the court must attempt to make a "a retroactive calculation of the probability of success as measured at the beginning of litigation." *Skelton*, 860 F.2d at 258. Class counsel's calculation method does not allow the court to make this assessment, as the suggested multiplier of 1.86 appears to be the result of mathematical happenstance, not a reflection of the probability of success at the inception of the case.

The court recognizes that counsel have already spent a significant amount of time attempting to justify their fees. However, the materials provided by counsel neither allow the court to make an informed choice between the "percentage-of-fund" or lodestar methods nor permit it to select a percentage (for the "percentage-of-fund" method) or a risk multiplier (for the lodestar method). Rather than limit fees to the unenhanced lodestar based on the filings to date, the court will permit counsel to file an additional supplemental memorandum addressing those concerns.

## Conclusion

As discussed above, the court finds that it may award attorneys' fees that exceed the lodestar. Nevertheless, counsel's submissions do not allow the court to make an informed choice between the

"percentage-of-fund" or lodestar methods or determine the appropriate percentage (for the "percentage-of-fund" method) or a risk multiplier (for the lodestar method). Class counsel shall, therefore, file an additional supplemental memorandum by November 6, 2013, 2013, addressing those issues.

Geraldine Soat Brown
United States Magistrate Judge

October 23, 2013